## CARL DREWS v. NORTHERN .PACIFIC RAILWAY COMPANY and Another.[1]

December 29, 1911.

Nos. 17,417—(157).

**Contributory negligence.**
> The evidence does not conclusively show that plaintiff's intestate was guilty of contributory negligence in driving over defendant's tracks after the passage of a train going west at a village crossing, where he was struck and killed by a through passenger train going east.

Two actions in the district court for Todd county, one by the administrator of the estate of Robert Drews, deceased, against defendant railway company and F. A. Zimmer, to recover $5,000 .

[1] Reported in 133 N. W. 865.

[Note] Duty to stop, look, and listen after entering on first track, see note in 17 L.R.A.(N.S.) 505.

116 M.—25.

for the death of his intestate, and the other by Carl Drews, individually, against defendant railway company to recover $500 for destruction of plaintiff's property. The negligence alleged in the complaints was that defendants caused a locomotive and train to approach and cross a specified highway crossing at a great and negligent rate of speed, carelessly omitted to give any signal of its approach, and that defendants negligently failed to provide a flagman and to give decedent any warning of the approach of the train. The answers alleged contributory negligence on the part of plaintiff's intestate. The cases were tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $2,500 in the first action and for $415 in the second action. From orders denying defendants' motions for judgment notwithstanding the verdicts or for new trials, they appealed. Affirmed.

*C. W. Bunn* and *Charles Donnelly,* for appellant.
*George F. Cashman* and *O'Brien, Young & Stone,* for respondent.

LEWIS, J.

Defendant maintained two main tracks, one passing and one house track, at the village of Aldrich. They were parallel, and ran east and west. The main track used for east-bound trains was at the south, and the main track used for trains bound west was next to it, with eight feet in the clear between them. The passing track was next to the north, and connected with the west main by switch at a highway crossing which ran north and south just east of the elevator. The house track was located twenty-five feet north of the switch, and ran on the south side and close to the elevator, and north of the depot (about three hundred feet further west), and connected with the west main at a point several hundred feet further west.

Plaintiff's intestate was a young man twenty-four years of age, and during the forenoon of November 14, 1910, he drove his father's team and wagon from the country home south of the village and left two ladies at the depot. It was their intention to take the east-bound passenger train due at 12:21. He arrived at the depot before train time, left the ladies, and drove on across the house track, presumably to the village at the north. A west-bound through pas-

senger train was due to pass the village without stopping at 12:21, but on this occasion it was about five minutes late. During this time a west-bound freight train of about sixty cars was standing on the passing track, with the engine located not far east from the crossing, and about five minutes after the through passenger train had gone west it pulled out onto the west main and passed the crossing at about five or six miles per hour.

While the freight train was passing the crossing, the deceased was seen in the wagon with the team facing south and standing on the elevator track, apparently waiting for a chance to cross to the south. When the freight train got out of the way he started up, and as he crossed the tracks looked west towards the receding train. As the team were passing over the south rail of the main west track, he saw an east-bound through passenger train approaching from the west, and pulled on the lines to hold back the team. It was too late. The horses reared, appeared to drop down upon the cylinder head of the engine, and the collision killed both him and the team. Neither the engineer nor the fireman knew of the accident until later.

The negligence charged was running the passenger train at an excessive rate of speed without proper signals. There was evidence tending to show no bell was rung and no whistle blown for the crossing, and appellant submits the case upon the single ground that the contributory negligence of the deceased was conclusively proven.

The evidence fairly warranted the jury in finding that the deceased stopped at the house track for the purpose of watching the operations of the trains and to await a favorable opportunity to pass. From that point the view was unobstructed along the house track to the west for a distance of half a mile. He stopped for some purpose. The freight train was standing on the passing track. The west-bound passenger went through, and the freight then pulled out. According to defendant's evidence the train was running at forty miles per hour, at which rate it would require only forty-five seconds to reach the crossing after it came into view. Presumably the deceased looked west before starting to cross after the freight train passed. Either the passenger had not yet appeared in sight, or, if it had, the freight may have cut off his view; for at the time he reached

the passing track the caboose of the freight had nearly reached the depot. The passenger passed the caboose a short distance west of the depot.

It is very clear that no serious question can be raised as to the young man's conduct prior to the time he reached the west-bound main track. At that point his view of the east-bound track was cut off by the freight. Should he have stopped and looked before going on? He lived on a farm four miles south of the village, and, although familiar with the arrangement of tracks, there is no evidence to show that he knew the east-bound passenger was due at that time. He may not have known that the southerly track was used exclusively for east-bound trains, and it was not an unreasonable conclusion if he assumed that the sidetracking of the freight for the west-bound was an assurance for the time that the way was clear. He did look to the west towards the receding freight, and saw the oncoming passenger; but the speed of the train was so great and the time so short he was unable to check his team in time.

The facts are different than in Marty v. Chicago, St. P. M. & O. Ry. Co. 38 Minn. 108, 35 N. W. 670, on which defendant relies. There it was shown that Marty knew that the track he was about to cross was used for outgoing trains and was familiar with the movement of the trains.

Affirmed.